UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - x

                           :

  UNITED STATES OF AMERICA,

                           :

       - v. -                    **17 Cr. 47 (DLC)**

                           :

  MAHMOUD THIAM,

                           :

          Defendant.

                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

<br><br>

### GOVERNMENT'S MOTIONS *IN LIMINE*

<br><br><br>

                                 JOON H. KIM
                                 Acting United States Attorney
                                 Southern District of New York
                                 Attorney for the United States of America

                                 ANDREW WEISSMANN
                                 Chief, Criminal Division, Fraud Section
                                 United States Department of Justice

Christopher J. DiMase
Elisha J. Kobre
Assistant United States Attorneys

Lorinda Laryea, Trial Attorney
Criminal Division, Fraud Section

- Of Counsel -

## **TABLE OF CONTENTS**

BACKGROUND .................................................................................................................. 1

DISCUSSION ..................................................................................................................... 2

   I.    Motion to Instruct Jury on Guinean Anti-Bribery Law. ........................................ 2

      A.   Relevant Facts ............................................................................................ 3

      B.   Applicable Law .......................................................................................... 4

      C.   Discussion ................................................................................................. 5

   II.   Motion to Preclude Certain Evidence Regarding the Shareholders Agreement. ............... 6

      A.   Relevant Facts ............................................................................................ 6

      B.   Applicable Law .......................................................................................... 7

      C.   Discussion ............................................................................................... 10

   III.   Motion in Limine to Admit Foreign Business Records Pursuant to 18 U.S.C. § 3505. .... 12

      A.   Relevant Facts .......................................................................................... 12

      B.   Applicable Law ........................................................................................ 12

      C.   Discussion ............................................................................................... 13

   IV.   Motion to Preclude the Defense from Eliciting Thiam's Hearsay Statements. ................ 17

      A.   Relevant Facts .......................................................................................... 17

      B.   Applicable Law ........................................................................................ 17

      C.   Discussion ............................................................................................... 19

   V.   Motion to Admit Records from HSBC Bank and JP Morgan Chase as Business Records. 21

      A.   Relevant Facts .......................................................................................... 21

      B.   Applicable Law ........................................................................................ 22

      C.   Discussion ............................................................................................... 25

   VI.   Motion to Preclude Arguments and Evidence Concerning Statute of Limitations............ 27

CONCLUSION .................................................................................................................. 29

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :

UNITED STATES OF AMERICA,

                        :

      - v. -

                        :

MAHMOUD THIAM,              17 Cr. 47 (DLC)

                        :

          Defendant.

                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MOTIONS *IN LIMINE*

The Government respectfully submits the following motions *in limine*: (1) motion to instruct the jury on Guinean anti-bribery law; (2) motion to preclude the defense from offering certain evidence and testimony regarding the Shareholders Agreement; (3) motion to admit foreign business records from Hong Kong pre-trial pursuant to 18 U.S.C. § 3505; (4) motion to preclude the defense from eliciting Thiam's hearsay statements; (5) motion to admit records from HSBC Bank and JP Morgan Chase Bank as business records pursuant to Fed. R. Evid. 803(6); and (6) motion to preclude the defense from making arguments and presenting evidence concerning the statute of limitations.  The Government also requests leave to file additional motions should other issues arise before or during trial.

## <u>BACKGROUND</u>

On January 18, 2017, a grand jury in this district returned a two-count Indictment against Mahmoud Thiam, 17 Cr. 47 (the "Indictment").  Count One charges Thiam with transacting in criminally derived property, in violation of 18 U.S.C. § 1957.  Count Two charges Thiam with money laundering, in violation of 18 U.S.C. § 1956.  Trial is scheduled to begin on April 24, 2017.

At trial, the Government expects the evidence to show that Thiam, a United States citizen who was Minister of Mines and Geology of the Republic of Guinea (the "Minister of Mines") in 2009 and 2010, engaged in a scheme to accept bribes from senior representatives of a Chinese conglomerate and to launder that money into the United States and elsewhere. More specifically, in exchange for such bribe payments, Thiam, used his position as Minister of Mines to facilitate the award to a Chinese conglomerate of exclusive and highly valuable investment rights in a wide range of sectors of the Guinean economy, including near total control of Guinea's valuable mining sector ("Shareholders Agreement").

In order to covertly receive the bribes, Thiam opened a bank account in Hong Kong (the "Thiam Hong Kong Account"). Thiam then transferred millions of dollars in bribe proceeds from this Thiam Hong Kong Account to, among others, his bank accounts in the United States; a Malaysian company that facilitated and concealed the purchase of a $3,750,000 estate in Dutchess County, New York; and private preparatory schools in New York attended by Thiam's children. Overall, Thiam received in the Thiam Hong Kong Account bribes totaling approximately $8.5 million from the Chinese conglomerate.

## DISCUSSION

### I.    Motion to Instruct Jury on Guinean Anti-Bribery Law.

The Government moves this Court to instruct the jury in this case regarding two Guinean anti-bribery statutes. Thiam is charged with laundering his proceeds of bribery, which he obtained in violation of those Guinean laws. Therefore, the jury will need to be instructed regarding the relevant Guinean anti-bribery statutes because the violation of those statutes forms the specified unlawful activity underlying the money laundering charges in this case.

2

### A.  Relevant Facts

The Indictment specifically identifies Guinean laws prohibiting bribery as the specified unlawful activity underlying both counts.[1]  *See* 18 U.S.C. § 1956(c)(7)(B)(iv) (defining a "specified unlawful activity" as including "an offense against a foreign nation" involving "bribery of a public official").  The two Guinean anti-bribery statutes relevant to this case are:  Article 192 of Guinea's Penal Code, which criminalizes "passive corruption," or the receipt of bribe payments by a public official, and Article 194 of Guinea's Penal Code, which criminalizes "active corruption," or the payment of bribes by other persons to a public official.[2]

Article 192, subsection 1, entitled "Passive Corruption," provides, in pertinent part:

> Article 192:  Shall be punished by imprisonment of 1 to 5 years and a fine double the value of the promises accepted or the things received or solicited, with said fine no less than 100,000 Guinean francs (GNF), whoever has solicited or accepted offers or promises, solicited or received donations or gifts in order to:
>
> 1 °) – being an elected public official, a public official of the administrative or judicial order, member of the military or related staff, agent or official of a public administration or citizen in charge of a public service ministry, to perform or refrain from performing an act within the scope of his/her functions or job, fair or not, but not subject to salary;

*See* Govt. Ex. A1.

---

[1]  The language of Counts One and Two differs slightly, but both clearly allege a violation of Guinean anti-bribery law as the relevant specified unlawful activity.  Count One refers to "proceeds of bribes paid to Thiam in violation of laws of the Republic of Guinea prohibiting bribery of a public official," and Count Two similarly refers to "proceeds of bribes paid to Thiam while Thiam was Minister of Mines in violation of the laws of the Republic of Guinea."

[2]  Thiam obtained the money that he laundered into the United States by violating Article 192.  Thiam himself did not violate Article 194.  However, because the Chinese conglomerate violated Article 194 by bribing Thiam, that statute may also form the basis of the money laundering specified unlawful activity.

Article 194, entitled "Active Corruption," provides, in pertinent part:

> Article 194:  Whosoever, to obtain, either performance of an act or the refraining from performance of an act or one of the favors or advantages set forth in articles 192 and 193, having employed assaults or threats, promises, offers, donations or gifts or given in to entreaties aimed at bribery, even if he/she has not taken the initiative, whether or not the force or bribery has had an effect, shall be punished by the same penalties as those set forth in said articles against the bribed person.

*See* Govt. Ex. A2.

The Government has obtained an affidavit executed by Togba Zogbelemou, a former Minister of Justice of the Republic of Guinea who had personal involvement in drafting the 1998 Guinean Penal Code, which includes Article 192 and Article 194.  Mr. Zogbelemou has signed an affidavit, the original French version of which is attached to this Motion as Government Exhibit B1; an English translation of Mr. Zogbelemou's affidavit is attached as Government Exhibit B2. In the affidavit, Mr. Zogbelemou explains the elements of Article 192 and Article 194.

### B.  Applicable Law

Federal Rule of Criminal Procedure 26.1 provides that "[a] party intending to raise an issue of foreign law must provide the court and all parties with reasonable written notice."[3]  "Issues of foreign law are questions of law, but in deciding such issues a court may consider any relevant material or source—including testimony—without regard to the Federal Rules of Evidence."  Fed. R. Crim. P. 26.1; *see also United States v. Kozeny*, 582 F. Supp. 2d 535, 538 (S.D.N.Y. 2008) ("Though foreign law once was treated as an issue of fact, it now is viewed as a question of law

---

[3]  The Government gave notice of its intent to use Guinean bribery law as the basis for its money laundering charges in both the initial criminal complaint and the Indictment.

and may be determined through the use of any relevant source, including expert testimony.");

*United States v. Mitchell*, 985 F.2d 1275, 1280 (4th Cir. 1993) ("The determination of foreign law is a question of law to be established by any relevant source, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").

### C.  Discussion

To assist the Court in formulating jury instructions concerning the underlying specified unlawful activity, the Government submits certified English language translations of Guinea's relevant bribery laws (Govt. Exs. A1 and A2), and the affidavit of Mr. Zogbelemou, a former Minister of Justice involved in the drafting to the statutes (Govt. Ex. B1), along with an English translation of that affidavit (Govt. Ex. B2).  In his affidavit, Mr. Zogbelemou sets forth: (a) the elements of Article 192, subsection 1 that must be satisfied to support a conviction of a public official for accepting a bribe payment; and (b) the elements of Article 194 that must be satisfied to support the conviction for making a bribe payment to a public official.  Mr. Zogbelemou also provides additional guidance in connection with several of the elements, including his legal opinion that, as a matter of law, the Minister of Mines is a covered public official under Article 192, subsection 1, and Article 194.  As part of its forthcoming requests to charge, the Government intends to submit a proposed jury instruction on Guinean anti-bribery law, which will include certified translations of Article 192, subsection 1, and Article 194, and will track the elements of the two statutes as detailed in Mr. Zogbelemou's affidavit.

Based on the attached statutes and affidavit of Mr. Zogbelemou, the Government respectfully requests the Court instruct the jury as proposed by the Government concerning Guinean law.  To the extent that the Court requires additional evidence regarding Guinean anti-

bribery law, including the construction and interpretation of Articles 192 and 194, the Government

is prepared to make Mr. Zogbelemou available to testify at a pretrial hearing in this matter.[4]

## II.     Motion to Preclude Certain Evidence Regarding the Shareholders Agreement.

The Government moves to preclude Thiam from offering evidence, including testimony

and exhibits, regarding the merits of the mining contract in Guinea for which Thiam received bribe

payments (the "Shareholders Agreement").   As discussed below, the issue in this case is whether

Thiam accepted money in exchange for his assistance with respect to the Shareholders Agreement.

It is neither material nor a defense to the crimes charged that the Shareholders Agreement was

beneficial to Guinea and thus, had there been no bribe, Thiam might have taken the same actions

for which he was illegally compensated.

### A.  Relevant Facts

Agents with the FBI arrested Thiam on or about December 13, 2016.  Following his arrest,

Thiam waived his *Miranda* rights, and provided a video-recorded post-arrest statement.   During

that statement, Thiam claimed that the $8.5 million in payments from executives of the Chinese

conglomerate represented an undocumented, unsecured, interest-free personal loan.  When pressed

---

[4]  Given the time and expense involved in traveling from Guinea to the United States for the purpose of testifying at
such a hearing, to the extent that the Court wishes to hear Mr. Zogbelemou's testimony relating to Guinean anti-
bribery law, the Government requests that the Court take that testimony via live video-conference.  *See, e.g., United
States v. Jordan*, 742 F.3d 276, 279 (7th Cir. 2014) (holding, in the context of a revocation hearing, that "where live
testimony would be difficult or burdensome to obtain, confrontation need not be face-to-face.  Video conferencing
could allow a distant witness to testify and face cross-examination with minimal inconvenience and expense.");
*United States v. Burke*, 345 F.3d 416, 425-26 (6th Cir. 2003) (observing that "the Supreme Court has repeatedly
explained that the right to confrontation is basically a trial right," and that "the physical confrontation right is not
absolute, and alternatives such as video-confrontation may be acceptable where necessary to further an important
policy") (internal quotations and citations omitted); *United States v. Moruzin*, No. CRIM. 05-306 (JBS), 2007 WL
2914903, at *3 (D.N.J. Oct. 1, 2007) (upholding use of video-conference testimony at *Sell* hearing, in part because
"the right to confrontation is a trial right" and "courts have repeatedly declined to hold that the Sixth Amendment
right to confrontation extends to various pretrial contexts").  The United States embassy in Conakry, Guinea has
well-functioning video teleconference equipment available to facilitate such remote live video testimony.

on the connection between the payments and the execution of the Shareholders Agreement, Thiam repeatedly changed the topic to the purported benefits of the agreement to the people of Guinea and its economy.  In light of these claims, the Government anticipates that Thiam may attempt to elicit evidence at trial that, even absent the bribe payments, his facilitation of Guinea's entry into the Shareholders Agreement was lawful and proper, and allegedly in the best interest of Guinea. As described below, such evidence is immaterial to the bribery charges at issue in this case, and should be precluded.

### B.  Applicable Law

#### 1.  Federal Rules of Evidence 401-403

Relevant evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Evidence that is not relevant is inadmissible.  Fed. R. Evid. 402. "To be relevant, the evidence need not definitively resolve a key issue in the case," but it must "move the inquiry forward to some degree." *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010).  If evidence does not "bear on any issue involving the elements of the charged offense," it is "not of consequence to the determination of the action" and therefore irrelevant. *United States v. Dean*, 980 F.2d 1286, 1288 (9th Cir. 1992).  The standard for relevancy is not a strict one, but it exists to ensure that the trial remains focused on the question of guilt for the charged offense, rather than on the defendant's unrelated actions and motivations.  *See United States v. Nichols*, 820 F.2d 508, 510 (1st Cir. 1987).

Federal Rule of Evidence 403 states: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

### 2.  Relevant Bribery Law

The Guinean statutes criminalizing the solicitation or receipt of a bribe by a public official, Article 192, subsection 1, and Article 194, make clear that the law is violated whether the resulting action taken by the official is "fair or not."  Therefore, as detailed in Mr. Zogbelemou's affidavit, evidence of the propriety of a public official's act, performed in return for a bribe payment, is not relevant to the determination of whether or not a violation of Guinean anti-bribery laws has occurred.  As the affidavit states, "it is irrelevant whether the act in question was fair or just, or not.  In other words, it is immaterial whether the defendant might have lawfully and properly engaged in (or refrained from engaging in) the same act."  In this way, Guinean anti-bribery law closely tracks U.S. anti-bribery law, including Title 18, United States Code, Section 201, which criminalizes bribery of U.S. public officials.

In the context of bribery prosecutions under Section 201, U.S. courts have deemed irrelevant evidence demonstrating that a public official's act, taken as part of a bribery scheme, benefitted the official's constituents or the community at large.  *See, e.g., United States v. Labovitz,* 251 F.2d 393, 394 (3rd Cir. 1958) ("to constitute the offense of attempted bribery it is immaterial whether the official action sought to be influenced be right or wrong") (quoting *Daniels v. United States,* 17 F.2d 339, 343 (9th Cir. 1927)); *United States v. Miller,* 340 F.2d 421, 424-25 (4th Cir. 1965) ("It is immaterial whether the official action which the briber seeks to influence is right or wrong . . . ."); *c.f. United States v. Lopez-Lukis,* 102 F.3d 1164, 1169 n.13 (11th Cir. 1997)

("Sections 1341 and 1346 do not address the wisdom or results of a legislative decision; rather, they concern the manner in which officials make their decisions.").

Likewise, U.S. courts have held that the federal anti-bribery statute does not require proof that the public official altered or took a position he would not have otherwise taken but for the payment, or that his action was otherwise unlawful or an inappropriate exercise of his discretion. *See, e.g., United States v. Jannotti,* 673 F.2d 578, 601 (3rd Cir. 1982) (reiterating prior holding that "it is neither material nor a defense to bribery that 'had there been no bribe, the [public official] might, on the available data, lawfully and properly have made the very recommendation that [the briber] wanted him to make'"); *United States v. Quinn,* 359 F.3d 666, 675 (4th Cir. 2004) (regarding 18 U.S.C. § 201(b) bribery conviction, "it does not matter whether the government official ends up taking the same action he would likely have taken if he were not bribed"); *United States v. Orenuga,* 430 F.3d 1158, 1165 (D.C. Cir. 2005) (no error to charge jury in bribery case that "[i]t is not a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act"); *United States v. O'Keefe*, 252 F.R.D. 26, 31 (D.D.C. 2008) ("[T]he fact that other public officials would and should have performed that act to which the bribe taker was clearly entitled cannot possibly negate the bribe taker's guilt."); *c.f. United States v. Bryant,* 556 F. Supp. 2d 378, 392 (D.N.J. 2008) (regarding honest services fraud case, "an official can have the intent to be influenced by a bribe . . . even if, ultimately, the official ends up taking *the same action* he would likely have taken if he were not bribed.") (citing *Quinn,* 359 F.3d at 675) (emphasis in original).

9

### C.  Discussion

Here, evidence regarding the merits of Guinea's entry into the Shareholders Agreement with the Chinese conglomerate are irrelevant under Rule 402 and also carries substantial risk of confusing and misleading the jury under Rule 403.  In line with the U.S. legal precedent set forth above, the clear intent of the language "fair or not" in Article 192, subsection 1, is to prevent Guinean public officials from asserting in defense to a charge of bribery that the act in question was beneficial to the public, or otherwise an appropriate exercise of their official discretion.  The Government is not required to show that Thiam would have acted differently in the absence of the financial incentives, or that the actions he took in return for the bribe payments were detrimental to Guinea's interests.  Under U.S. law, as with Guinean law, a public official "is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid." *Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 378 (1991) (citing *Jannotti,* 673 F.2d at 601).  The policy reason underlying the inclusion of the language "fair or not" in the Guinean statute is no different than that underlying the U.S. courts' interpretation of U.S. bribery law.  As the Third Circuit observed in *United States v. Labovitz,* involving a violation of 18 U.S.C. § 201:

> It is a major concern of organized society that the community have the benefit of objective evaluation and unbiased judgment on the part of those who participate in the making of official decisions. Therefore, society deals sternly with bribery which would substitute the will of an interested person for the judgment of a public official as the controlling factor in official decision.  The [bribery] statute plainly proscribes such corrupt interference with the normal and proper functioning of government.

251 F.2d at 394.

Because it is not a defense to the specified unlawful activity charged in the Indictment– namely, violations of Guinean bribery law–that the Shareholders Agreement may have benefitted Guinea, or that Thiam may have promoted the agreement or facilitated its execution even absent the bribes, evidence to that effect is irrelevant as a matter of law.  Such evidence would not tend to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Thus, any such evidence should be precluded, whether in the form of defense exhibits, cross-examination of the Government's witnesses, or direct testimony from defense witnesses.

Even if the evidence were relevant to something other than Thiam's anticipated position that he would not have acted differently in the absence of bribes or that the Shareholders Agreement was in the public interest, such evidence should be excluded pursuant to Rule 403 because it has the potential to confuse or mislead the jury, and would unnecessarily and unduly delay the trial of this matter.  *See Nichols*, 820 F.2d at 510 ("Even if [the evidence the defendant sought to introduce] had been marginally relevant, however, the time and effort needed to evaluate [the defendant's] claim would have diverted the jury from the real issues in this case.").  Allowing the introduction of such evidence would transform the trial into a debate about the merits of the Shareholders Agreement itself.  Testimony and exhibits about the public support and perceived need for the agreement, as well as testimony and exhibits countering that evidence, would overtake the proceedings.  The resulting confusion could lead the jury to believe, incorrectly, that if the agreement had merit, Thiam would not have been in violation of Guinean anti-bribery law.  To avoid the great risk of confusion and waste of time that this evidence presents, this Court should preemptively exclude it.

11

III.    **Motion in Limine to Admit Foreign Business Records Pursuant to 18 U.S.C. § 3505.**

The Government respectfully moves this Court *in limine* to admit foreign business records from Hong Kong before trial pursuant to 18 U.S.C. § 3505 through the use of foreign certifications and without the calling of a custodian of records to testify at trial.  These records are admissible pre-trial under well-settled precedent because they meet all the requirements of Section 3505.  Further, their admission without a live witness does not violate the Confrontation Clause of the Sixth Amendment since the business records themselves are not testimonial and the foreign certification will only be examined by the Court pre-trial.

A.  **Relevant Facts**

At trial, the Government intends to introduce documents that it received from China (Hong Kong Special Administrative Region) pursuant to a Mutual Legal Assistance Treaty ("MLAT") request.  These documents include bank account records for the Thiam Hong Kong Account, account statements for a credit card in Thiam's name, and bank account records of the Chinese conglomerate and of its senior executives who bribed Thiam.

The Government has produced these bank records and the accompanying custodian certifications to the defense.  On or about February 28, 2017, the Government provided written notice to the defense of its intent to use the bank records from Hong Kong at trial pursuant to 18 U.S.C. § 3505.

B.  **Applicable Law**

Section 3505(a)(1) of Title 18 exempts foreign business records from the prohibition against admission of hearsay evidence if a foreign certification attests that: (A) the record was

12

made at or near the time of the occurrence of the matters set forth by a person with knowledge of the matters; (B) the "record was kept in the course of regularly conducted business activity"; (C) the business made such a record as a regular practice; (D) the record is the original or a duplicate of the original.  Section 3505(a)(2) provides that the foreign certification also authenticates the record.  The test here is essentially the same as the test governing the admission of business records under Federal Rules of Evidence 803(6)(A) and 902(11).  *See United States v. Anekwu*, 695 F.3d 967, 976 (9th Cir. 2012).

The Government may rely on the procedures set forth in Section 3505 if it provides written notice of its intention to the defense at the arraignment or as soon after as practicable.  18 U.S.C. § 3505(b).  The defense must make a motion if it opposes the admission of the foreign business records; failing to do so will constitute a waiver of objection to the introduction of the record.  *Id.*  The court must rule on the admissibility of records offered under Section 3505 before trial.  *Id.*

### C.  Discussion

The Court should admit the Hong Kong bank records because they meet all the requirements of Section 3505 and their admission does not violate the Confrontation Clause.  First, the bank records qualify as "foreign record[s] of regularly conducted activity" since they are records of acts and events maintained in Hong Kong.  *See* 18 U.S.C. § 3505(c)(1) ("'foreign record of regularly conducted activity' means a . . . record, or data compilation, in any form, of acts, events . . . maintained in a foreign country.").

Second, the foreign certifications that accompany these records, attached to this motion as Government Exhibit C, are sufficient to exempt the bank records from the prohibition against the admission of hearsay and to authenticate them under Section 3505.  The certifications include all

13

of the attestations required under Section 3505(a)(1).  Moreover, the declarations stated that the HSBC employees made the attestations "knowing that if I willfully state anything that I know to be false or do not believe to be true, I may be liable to prosecution for a criminal offence."  Therefore, the certifications in this case satisfy Section 3503.  *See* 18 U.S.C. § 3505(c)(2) ("'foreign certification' means a written declaration made and signed in a foreign country by the custodian of a foreign record of regularly conducted activity or another qualified person that, if falsely made, would subject the maker to criminal penalty under the laws of that country").

The certification was also signed by a solicitor or a "Commissioner for Oaths."  In Hong Kong, a Commissioner of Oaths is a "'member of the judiciary' with full judicial power to certify declarations, somewhat like a magistrate and with significantly greater authority than a notary public."  *United States v. Hing Shair Chan*, 680 F. Supp. 521, 524-526 (E.D.N.Y. 1988) (holding that sworn statement signed in front of Commissioner of Oaths under penalty of perjury fulfills demands of Section 3505 for admission and authentication); *see also United States v. Gleave*, 786 F. Supp. 258, 279 (W.D.N.Y. 1992), *rev'd on other grounds United States v. Knoll*, 16 F.3d 1313 (2d Cir. 1994) ("The attestation by the record custodian pursuant to § 3505(c)(2) that he will be subject to criminal liability for a false certification affords the Records a sufficient degree of reliability."); *United States v. Marcos*, No. SSSS 87 CR. 598(JFK), 1990 WL 37845, at *7 (S.D.N.Y. Mar. 27, 1990) (admitting foreign business records from Hong Kong and Singapore

14

under Section 3505 without testimony of live custodian of records where records were accompanied by foreign certifications made under penalty of perjury).[5]

Third, on February 28, 2017, the Government provided the required written notice to the defense regarding its intent to offer these documents into evidence at trial.  The Government has also produced these records and the foreign certifications to the defense.

Fourth, the admission of these records based on the foreign certification without testimony from a live witness satisfies the Confrontation Clause.  Pursuant to the Confrontation Clause, "an out-of-court statement [that] is testimonial in nature . . . may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness."  *Bullcoming v. New Mexico,* 564 U.S. 647, 657 (2011); *Crawford v. Washington,* 541 U.S. 36, 59 (2004).  The Second Circuit has explained that an out-of-court statement is testimonial only "when it is made with the primary purpose of creating a record for use at a later criminal trial."  *United States v. James,* 712 F.3d 79, 96 (2d Cir. 2013). Business records, like the bank records here, are not testimonial because they were "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial."  *Id.* at 90 (quoting *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 324, (2009)).

---

[5] On or about August 15, 2014, the Government sent an MLAT to Hong Kong seeking records relating to all bank accounts in Thiam's name and over which Thiam has signatory authority at HSBC in Hong Kong.  On September 18, 2015, the Government sent a supplemental request to Hong Kong for records of bank accounts at HSBC in Hong Kong held by executives of the Chinese conglomerate.  Hong Kong sent us the Thiam Hong Kong Account records on June 12, 2015, the bank records for the Chinese conglomerate executives on August 17, 2016, and the records for Thiam's credit card on February 24, 2017.  The August 2016 and the February 2017 records were accompanied by certifications from HSBC.  The June 2015 records did not have a certification, and upon the request of the Government, HSBC provided the required certification for the records on April 3, 2017.  That the certification for the June 2016 records did not accompany the records is of no moment because HSBC reviewed the records and provided a certification authenticating them which contained the necessary attestations under Section 3505.  *See United States v. Sturman*, 951 F.2d 1466, 1489 (6th Cir. 1991) (stating that Section 3505 contains no requirement that the certificate be attached to the authenticated record or that it identify the specific records it authenticates).

Therefore, the introduction of the foreign business records themselves at trial does not violate Thiam's rights under the Confrontation Clause.

The use of the foreign certification to authenticate and admit the records pre-trial also does not violate the Confrontation Clause.  The Confrontation Clause applies to an out-of-court testimonial statement that the Government introduces against the defendant *at trial*.  *See United States v. Qualls*, 613 F. App'x 25, 28 (2d Cir. 2015).  However, the Government is not seeking to introduce the foreign certifications at trial.  The Second Circuit has stated that this Court can rely on the foreign certifications to admit the foreign bank records pursuant to Section 3505 pre-trial as long as the certifications are not offered into evidence, described to the jury, or viewed by the jury.  *See id.* at 28-29 (holding that district court's review of foreign certification pre-trial to determine whether to admit foreign business records under Section 3505 did not violate Confrontation Clause because certification was not offered into evidence, nor described to or viewed by the jury).[6]

Therefore, the Court should admit the Hong Kong bank account records without live testimony pursuant to 18 U.S.C. § 3505 because (1) the business records and the foreign certifications meet the requirements set forth in the statute, and (2) the admission of the foreign business records without a live witness does not violate the Confrontation Clause since the

---

[6] In *Qualls*, the Second Circuit did not "reach the issue of whether the Confrontation Clause would be implicated by admitting certifications prepared by records custodians solely to authenticate or lay the foundation for otherwise admissible business records."  613 F. App'x at 29 n.1.  However, several circuits have rejected *Crawford* challenges to admission of domestic business record certifications.  *See United States v. Qualls*, 553 F. Supp. 2d 241, 245 (E.D.N.Y. 2008) (collecting cases).  In any event, the Government here does not seek to admit the certifications at trial; only to use them to establish the authenticity of the bank records pre-trial.

business records themselves are not testimonial and the foreign certification will be examined by the Court pre-trial and will not be introduced into evidence, described or viewed by the jury.

### IV.     Motion to Preclude the Defense from Eliciting Thiam's Hearsay Statements.

The Government respectfully requests that the Court preclude the defense from offering as evidence those portions of Thiam's recorded statements not offered by the Government.  Although the Government may offer Thiam's statements as statements by a party opponent, no such hearsay exception applies to the defendant, and the statements are not necessary to put those offered by the Government into proper context.

#### A.  Relevant Facts

On or about December 13, 2016, after his arrest, Thiam was interviewed by a special agent of the FBI.  This interview was video and audio recorded.  The recording was subsequently transcribed.  At trial, the Government will seek to offer the highlighted portions in the transcript of Thiam's post-arrest video interview set forth in Government Exhibit D hereto.[7]  Once admitted into evidence, the Government plans to play these portions of the video interview for the jury.

#### B.  Applicable Law

A defendant's statement may be offered into evidence by the Government on two possible bases:

> When the government offers in evidence the [ ] statement of a defendant it commonly does so for either of two reasons.  It may wish to use the statement to establish the truth of the matter stated. In these circumstances, under Rule 801(d)(2)(A) the statement is not hearsay, because it is simply a statement of the opposing party.  On the other hand, the government may wish to offer the statement to

---

[7] At present, the Government intends to offer only the highlighted portions identified in Government Exhibit D.  If the Government identifies any additional portions to be offered, it will immediately provide notice to the defense.

> show that the defendant made false representations to the authorities, from which the jury could infer a consciousness of guilt, and hence guilt.

*United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) (discussing post-arrest statements of the defendant offered by the Government at trial).  The defendant does not have a parallel ability to offer the statement into evidence.  "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."  *Id.*

The Government is under no obligation to offer all portions of a statement when it offers inculpatory admissions.  *See United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996) (finding that a "self-serving [exculpatory] statement that does not contradict, explain, or qualify the rest of the statement" did not need to be offered by Government under rule of completeness when Government offered inculpatory statements); *United States v. Smith*, 794 F.2d 1333, 1335-36 (8th Cir. 1986) (holding that district court did not err in precluding cross-examination on portions of post-arrest statement describing relationship to co-defendant and implicating co-defendant when Government offered admission that defendant had been present at the time of co-defendant's arrest).

Nevertheless, there are certain instances when a defendant may require the admission of certain portions of a post-arrest statement when the Government offers excerpts of a post-arrest statement.  Rule 106 of the Federal Rules of Evidence provides that: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time."

"Under this principle, an omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion. . . . The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999), on *reh'g*, 196 F.3d 383 (1999); see *United States v. Marin*, 669 F.2d at 84; *United States v. Benitez*, 920 F.2d 1080, 1086-87 (2d Cir. 1990) ("[The] 'rule of completeness' . . . is violated 'only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant.'" (quoting *United States v. Alvarado*, 882 F.2d 645, 651 (2d Cir. 1989)).  As such, "the rule of completeness is not a mechanism to bypass hearsay rules for any self-serving testimony." *United States v. Gonzalez*, 399 Fed. App'x 641, 645 (2d Cir. 2010).

The burden rests with the defendant to demonstrate that the portions of the statement he seeks to offer are necessary to clarify or explain the portions the Government intends to offer.  *See United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent.").  "The trial court's application of the rule of completeness is reviewed only for abuse of discretion." *Jackson*, 180 F.3d at 73.

### C.  Discussion

There is no legitimate basis on which Thiam could offer those portions not offered by the Government.  These remaining portions—i.e., the non-highlighted portions in Government Exhibit

19

D—consist primarily of self-serving statements by Thiam in which he attempted to explain why the official actions Thiam took to give away valuable rights to the Chinese Conglomerate were proper or in the best interests of the Guinea; how his conduct benefited Guinea and resulted in a loss to the Chinese Conglomerate; and how he had borrowed money from others in the same unusual fashion as he received money from executives of the Chinese Conglomerate—i.e., without a written agreement, with no interest, and with no requirement that he ever repay it.  These statements, to the extent relevant at all to the charges against Thiam,[8] are nothing more than self-serving statements.

Moreover, these remaining statements are not necessary to explain the context of the Thiam's admitted statements or to prevent those statements from being misleading.  The admitted portions of Thiam's statements reflect his official actions and substantial role as Minister of Mines of Guinea in promoting the award of valuable rights to the Chinese Conglomerate; his explanation for the receipt of millions of dollars in bribes from an executive of the Chinese Conglomerate with whom Thiam negotiated the agreement days before the agreement was signed; and Thiam's knowledge of the same executive's involvement in paying bribes to other public officials.  These statements of Thiam's knowing acceptance of bribes stand on their own.  They do not need other statements for context or to prevent any misunderstanding.  Accordingly, those hearsay statements of Thiam should be precluded.

---

[8]  The Government also moved *in limine* in Section II to preclude Thiam from offering such statements as irrelevant.

**V.    Motion to Admit Records from HSBC Bank and JP Morgan Chase as Business Records.**

   **A. Relevant Facts**

At trial, the Government intends to offer records from two Manhattan-based banks, HSBC Bank and JPMorgan Chase & Co., to which Thiam transferred proceeds of the bribes from Thiam's Hong Kong account. Each of these banks investigated Thiam's banking activities after identifying as suspicious the large unexplained wire transfers that Thiam made from Hong Kong to his United States accounts. The Government has obtained records from each of the banks, including records relating to the investigations. Government Exhibit E is a subset of these records provided by HSBC. Government Exhibit F is a subset of the records provided by JPMorgan Chase.

These records include, among other things, false statements and material omissions that Thiam made to bank employees after they caught on to his scheme. Thiam lied to the banks in an attempt to hide the source of his funds and to ensure that he could keep his accounts open, which would enable him to launder even more dirty money. Thiam hid from HSBC that he was a government official of Guinea, and hid from both banks the source of the bribe proceeds that he wired from his Hong Kong account. Thiam's false statements are reflected in, among other records that the banks maintained, call summaries, notes, e-mails, and other internal bank documents made contemporaneously by bank employees acting in the scope of their regular duties as employees of the banks. Exhibit F also includes a call summary of a March 22, 2010 phone call between Thiam's wife and a bank employee in which she initially lied to a bank

employee by telling a bank employee that Thiam was a consultant when he was really a government official.

The Government intends to offer testimony by bank employees directly involved in these investigations and in the preparation of the records contained in Government Exhibits E and F. This testimony is expected to include, among other things, that the records: were made at or near the time of the events by or from information transmitted by someone with knowledge, are kept in the course of the banks' regularly conducted activities, and that making the records was a regular practice of those activities.

## B.  Applicable Law

The business records exception to the hearsay rule provides for the admission of:

> A memorandum, report, record, or data compilation, in any form,
> of acts, events, conditions, opinions . . . made at or near the time by
> . . . a person with knowledge, if kept in the course of a regularly
> conducted business activity, and if it was the regular practice of
> that business activity to make the memorandum, report, record or
> data compilation, all as shown by the testimony of the custodian or
> other qualified witness. . . . unless the source of information or the
> method or circumstances of preparation indicate lack of
> trustworthiness.

*United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (quoting Fed. R. Evid. 803(6)).  *See also Abascal v. Fleckenstein*, 820 F.3d 561, 565 (2d Cir. 2016).

"The purpose of the rule is to ensure that documents were not created for 'personal purpose[s] . . . or in anticipation of any litigation' so that the creator of the document 'had no motive to falsify the record in question.'"  *Kaiser*, 609 F.3d at 574 (quoting *United States v. Freidin*, 849 F.2d 716, 719 (2d Cir. 1988)).  The Second Circuit has held "that Rule 803(6) 'favors the admission of evidence rather than its exclusion if it has any probative value at all.'"

*United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (quoting *In re Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981)).

The Second Circuit has upheld the admissibility, under the business records exception, records similar to those that the Government seeks to admit here.  For example, "call summaries" with customers made by a company's employees are admissible.  *Muller-Paisner v. TIAA*, 528 Fed. Appx. 37 (2d Cir. 2013) (holding that "call summaries, made pursuant to TIAA policy at or near the times of the conversations they recount, are admissible under the business records hearsay exception.") (citing Fed. R. Evid. 803(6).  In addition, handwritten "notes pertaining to phone conversations" in a cooperating witness's business planners are admissible as business records because "[a] business record need not be mechanically generated to be part of a 'regular practice.'"  *Kaiser*, 609 F.3d at 575.  Calendar entries documenting events that occurred on particular days are also considered business records.  *Id.* ("This Court has allowed the admission of calendars as business records where the witnesses testified that 'his regular business practice was to keep a calendar in which he documented events of which he had personal knowledge at or near the time they occurred.'") (quoting *United States v. Ford*, 435 F.3d 204, 214-15 (2d Cir. 2006)).[9]

"[T]here is no requirement that the person whose first-hand knowledge was the basis of the entry be identified, so long as it was the business entity's regular practice to get information from such a person."  *Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holdings A.S.*,

---

[9] Notably, the Second Circuit has held that the "degree of reliability necessary for admission [of potential hearsay evidence] is greatly reduced where, as here, the declarant is testifying and is available for cross-examination, thereby satisfying the central concern of the hearsay rule."  *Kaiser*, 609 F.3d at 576 (citing *United States v. McPartlin*, 595 F.2d 1321, 1350-51 (7th Cir. 1979)).

629 F.3d 282, 289 (2d Cir. 2010); *see also* Fed. R. Evid. P. 803(6)(A) (the records were made at or near the time by—*or from information transmitted by*—someone with knowledge) (emphasis added).

"Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person." *United States v. Blechman*, 657 F.3d 1052, 1065-1066 (10th Cir. 2011) (quoting *United States v. Gwathney*, 465 F.3d 1133, 1141 (10th Cir. 2006)) (internal quotation marks omitted). The crucial distinction is whether the information is supplied by an outsider to the business or by another employee of the business acting in the regular course of business and under a duty to provide accurate information. *Compare Blechman*, 657 F.3d at 1065-1066 ("If the person who provides the information is an outsider to the business who is not under a business duty to provide accurate information, then the reliability rationale that underlies the business records exception ordinarily does not apply.") *with United States v. Ary*, 518 F.3d 775, 787 (10th Cir. 2008) ("Although Garner relied on outside sources to update the records, those sources were also under a business duty indicating reliability."). The essential component of the business records exception is that "each actor in the chain of information is under a business duty or compulsion to provide accurate information. If any person in the process is not acting in the regular course of business, then an essential link in the trustworthiness chain fails." *Id.*

The Second Circuit has made clear this distinction between information in business records provided by another person with a duty to report (which are admissible) and outsiders to the chain of reporting under no such duty. *See United States v. Bortnovsky*, 879 F.2d 30, 34 (2d Cir. 1989) ("Although the adjuster's report might otherwise qualify as a business record within the meaning

of Rule 803(6), Belsky's statement does not satisfy the rule's requirements because there was no

showing that he had a duty to report the information he was quoted as having given."); *Hamad v.*

*Michael Eugene Cook & Concrete Reflections, Inc.*, 2014 U.S. Dist. LEXIS 96673 (S.D.N.Y. June

30, 2014)  (declining to apply business records exception for failure to show that the records were

based on information from those with a duty to report).

### C.  Discussion

The records contained in Government Exhibits E and F plainly satisfy the elements for

the business records exception and are similar to records repeatedly found admissible by the

Second Circuit under the business records exception.  The Government expects to offer

testimony from bank employees that, as to Government Exhibits E and F:  (a) the records were

made at or near the time by—or from information transmitted by—someone with knowledge, in

particular the bank employees scheduled to testify; (b) the records were kept in the course of the

banks' regularly conducted activity of monitoring its customers' banking activities; and (c)

making the records was a regular practice of that activity.  *See Abascal*, 820 F.3d at 565.

Moreover, these records are similar to the call summaries found admissible in *Muller-*

*Paisner v. TIAA*, 528 Fed. Appx. 37, handwritten "notes pertaining to phone conversations" in

business planners, found admissible in. *Kaiser*, 609 F.3d at 575, and calendars documenting

events that occurred on particular days, *id.*

To the extent that the records contain double hearsay–i.e., information from multiple

layers of bank employees each of whom is under a business duty to provide accurate

information–the records are still admissible because each such employee had a "duty to report"

the information.  *See Bortnovsky*, 879 F.2d at 34; *Blechman*, 657 F.3d at 1065-1066; *Ary*, 518 F.3d at 787.

The information in Government Exhibits E and F (as redacted) contains only information provided by bank employees under a duty to report or information otherwise not excluded by the rules against hearsay.  In particular, information provided by Thiam to the bank employees is separately admissible as an opposing party's statement.  *See* Fed. R. Evid. 801(d)(2).  Likewise, the statements made by Thiam's wife during the March 22, 2010 phone call also represent a party opponent's statements, and are therefore not hearsay, as those statements were made as Thiam's "agent" on a matter "within the scope of that relationship" *see* Fed. R. Evid. 801(d)(2)(D).  Both Thiam and his wife were account holders for the JP Morgan Chase account that became the focus of the inquiry reflected in Government Exhibit F.  As reflected in Government Exhibit F, on March 18, 2010, a bank employee left a phone message at the Thiam's and his wife's residence.  Thiam's wife returned this call and answered certain questions about the suspicious banking activity while stating that she would ask her husband the answer to other questions.[10]  Thiam's wife was thus

---

[10]  In addition, some of Thiam's wife's statements during the March 22, 2010 phone call are admissible because they are lies and thus not being offered for the truth of the matter asserted.  The portions of her statements that are true was admissible because they are statements of Thiam's "coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).  Evidence of Thiam's wife's knowing participation in the conspiracy includes a false statement to the bank employee reflected in Government Exhibit F that was designed to conceal the nature and source of the corrupt proceeds; her receipt, together with Thiam in their joint account, of substantial sums from the bribe proceeds in Thiam's Hong Kong account; and her participation in the purchase of the Dutchess County Estate, which Thiam purchased with the bribe proceeds.

Thiam's wife's initial false statement to the JP Morgan Chase employee, in response to direct questioning, that Thiam's occupation was "[f]inancial advisor and consultant for various mining companies worldwide," when he was in fact Minister of Mines for the Republic of Guinea, was in furtherance of the money laundering scheme because it was designed to conceal the corrupt source of the funds.  *See United States v. Ulbricht*, 79 F. Supp. 3d 466, 483 (S.D.N.Y. 2015) ("[S]tatements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence of those four prerequisites.") (quoting *United States v. Tracy*, 12 F.3d 1186 (2d Cir. 1993)).

acting in an agency capacity when she returned the call directed to Thiam regarding the transactions conducted from their joint account.

**VI.    Motion to Preclude Arguments and Evidence Concerning Statute of Limitations.**

The Court should preclude Thiam from presenting any argument, eliciting any testimony on direct or cross examination, or offering any exhibits to suggest that: (1) statute of limitations expired before he was charged; or (2) the orders that this Court issued suspending the statute of limitations under 18 U.S.C. § 3292 were invalid or inappropriately granted.  On April 4, 2017, the Court denied Thiam's motion to dismiss the Indictment as barred by the statute of limitations.  The Court held that the suspension orders in this case were valid under Section 3292, and the statute of limitations was suspended for the maximum three years.  The Court further held that the Indictment was timely since it was filed within the eight-year statute of limitations.

Even after the Court's denial of Thiam's motion to dismiss, Thiam may still try to raise at trial issues related to that Motion, including the amount of time that has passed since the underlying conduct occurred, the fact that the Government sent requests for foreign evidence, the suspension orders, and the statute of limitations.  Any such discussion of the statute of limitations or these related issues in front of the jury is inappropriate because legal issues such as the validity of suspension orders and statute of limitations are decided by judges and not by juries.  *See United States v. Davis*, 726 F.3d 357, 368 (2d Cir. 2013) (reiterating the principle that factual questions can be decided by the jury but courts decide legal issues).  There are no factual issues related to the statute of limitations in this case.  Thiam will not dispute the dates that events occurred, but he might try to raise the legal issues identified above in front of the jury.

Arguments regarding the statute of limitations and the suspension orders have no bearing on whether Thiam committed the charged crimes.  Allowing argument or evidence on this issue would unfairly prejudice the Government and serve only to confuse and mislead the jury.  *See United States v. Monsalvatge*, 850 F.3d 483 (2d Cir. 2017) ("A district court 'may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'") (quoting Fed. R. Evid. 403).  Therefore, the Court should preclude Thiam from presenting any argument, eliciting any testimony on direct or cross examination, or offering any exhibits relating to the suspension orders or the statute of limitations.

## CONCLUSION

For all of the foregoing reasons, the Government's motions *in limine* should be granted.

Dated: April 7, 2017
New York, New York

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By:      ____/s/_____
Christopher J. DiMase
Elisha Kobre
Assistant United States Attorneys
Telephone: (212) 637-2433 / 2599

ANDREW WEISSMANN
Chief, Criminal Division, Fraud Section
United States Department of Justice

By:      ____/s/_____
Lorinda Laryea
Trial Attorney
Telephone: (202) 353-3439

**AFFIRMATION OF SERVICE**

I, Christopher J. DiMase, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury that:

I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.

On April 7, 2017, I caused a copy of the Government's Motions In Limine to be served on counsel for Mahmoud Thiam via ECF.

Dated: April 7, 2017
       New York, New York

Respectfully submitted,


  /s/ Christopher J. DiMase
Christopher J. DiMase
Assistant United States Attorney